We'll hear argument first this morning in Case 09-958, Douglas v. Independent Living Center of Southern California and the Consolidated Cases. Ms. Schwartz. Mr. Chief Justice, and may it please the Court, there are many reasons why this Court should not recognize a private cause of action to enforce 30A, and I'd like to focus on three. First is separation of powers. Congress controls who can enforce Federal law, and it has not provided for private enforcement of 30A. Instead, it has provided for administrative enforcement. Second is the Spending Clause context in which the case arises. The very legitimacy of Spending Clause legislation depends on the State's voluntary and knowing acceptance of its obligations. For this reason, if Congress wants to provide for private party litigation, it must do so clear and unambiguously, and it has not done so in this case. And third is the language of 30A itself, which is broad and undefined, and which includes competing policy interests. These are suited to administrative enforcement, with all the expertise and judgment and discretion and administrative know-how that can be brought to bear. These three principles all focus, all point to one conclusion, that Section 30A is not enforceable. Ginsburg. Ms. Schwartz, the government doesn't have the injunctive power. As far as California's rates are concerned, California puts them into effect. The government can't stop that from happening, even if the government thinks that they are in violation of the Medicaid Act. Is that right? No, Your Honor, it is not. I mean, in the sense that it can't go out immediately and get an injunction, Your Honor is correct. However, the government has the power to deny the State planner. Yes, but that's a very drastic remedy, and it's going to hurt the people that Medicaid was meant to benefit. Does the government have any injunctive power, or is its only remedy a fund cutoff? Well, its only remedy, provided by statute, is to terminate funds. However, it is not a drastic remedy, and it is the remedy that's provided in Congress. How often does it happen? How often does it happen? How often has, in the Medicaid context? Very rarely. And the reason for that is because the way that most State plan amendments operate is that these issues are resolved on a consensual basis, generally within the 90 days provided by regulation. This case is the exception that proves the rule. Well, Ms. Schwartz, isn't it the exception because, in fact, you end-run, end-ran the administrative process, that you put your regulations, your new rate schedules into effect even before you submitted them to HHS, and continued them in effect while HHS was considering them, and continued them in effect to the extent that you were allowed to do so by injunction, even after HHS disapproved them? There is no end-run here because HHS's own regulations provide that our time for submitting a State plan amendment is within the 90 days that the amendment will take effect. And HHS will confirm that, I note this is the position of the Federal Government, that the State may implement its rate reductions while the State plan amendment is pending. It does so at the risk that if a State plan amendment is disapproved, that it may have to pay additional funds. But we do not do an end-run around anything. We are entirely consistent with the administrative process. Kennedy, could a State in its own courts provide for procedures whereby adversely affected parties could test the regulation? I don't believe so, and that's because, in addition to the It seems to me you have to say that. Otherwise, the next question would be, under Gonzaga, you wouldn't say that a State can entertain a monetary cause of action. So I think that's consistent with your position. Well, and I think that what's very important to focus on here is that this is not just any Federal statute that's being enforced, but it is a Spending Clause provision that is vague and ambiguous in its terms. It cries out, it has all these policy elements to it, and it cries out for administrative review. Well, when you say, but that brings me to a slightly different point. You introduced the fact or the consideration of what's administratively workable. The brief by the former HHS officials says quite to the contrary. It says that there are almost $400 billion of HHS expenditures that are supervised by 50 people that work out to $800 million each, and they say we don't have time for this, and it's much more efficient and it's much more consistent with the application of proper application of Federal law to allow this action to be brought in the courts. And I have two answers, Your Honor. One is that I don't think it is more efficient to have 700 district court judges interpreting a statute that does not have any objective standard but that is susceptible to many different interpretations. Well, Ms. Schwartz, the agency is going to— Well, I mean, that's a sky-high falling 700 judges. It would be just each district if it were in every district. And it certainly, to the extent we're involving a State, there would be only one State involved. So there's just the State of California and there are only four districts there and the suit could only be brought in one. So I think that's an in— I don't—I think that's a sky—the falling argument really works. But California is now subject to standards that don't apply anywhere else in the country. And I believe the Court acknowledged exactly this problem just last term in Astra v. Santa Clara when it declined to allow private parties to use a contract provision to do an end run around Gonzaga, Sandoval v. Alexander. I think I have that reversed. And the other case is that based on separation of powers principles, based on Spending Clause principles, limit the circumstances in which private parties can sue. Are you asking us to adopt a rule that is good for this one case only? You gave—or is there—could you state the rule in broader terms or more neutral terms? And you gave three reasons why we should reverse. One, Congress hasn't created a cause of action here. Well, Congress has never created causes of action, never creates a cause of action in any case in the Ex parte Young line or cases like that. The Supremacy Clause, because this is a Spending Clause, this was enacted under the Spending Clause, but you're not asking us to hold that. A Spending Clause legislation can never preempt State legislation, I take it. And then the language of 30A. Are you arguing that the Medicaid Act affirmatively precludes any action like this? I don't understand that. Is any of those arguments sufficient by itself, or do you have to take them all together and you're asking for a rule that only applies here? No. All of those arguments are sufficient, as is the fact that, as we've briefed, the Supremacy Clause itself doesn't supply a cause of action. But let me focus on those three points. These are point — the rule that we are seeking is that a Federal statute is not enforceable unless Congress intends for it to be enforceable, and that that principle has special force with respect to Spending Clause provisions where Congress has to clearly and unambiguously provide for that enforcement, because the State has to be on fair notice due to the nature of the Spending Clause of the obligations to which it is agreeing. That is Pennhurst. And that these apply with even greater force with respect to 30A because of the type of standards that it incorporates. If it's not suitable for — if the determination applying Gonzaga is that if you're filing under 1983, the administrative nature or the flexible nature of those standards is not appropriate for private enforcement, that shouldn't matter what vehicle you are using to bring the case. And I want to just — to put this into real clear context, in the three years that this case has been pending, California has submitted 68 State plan amendments outside of the rate context. Thirty-six of them were approved. The rest were withdrawn voluntarily. These cases — and they were all approved, almost all of them within the 90-day period. So the administrative process works. Sotomayor, were those amendments submitted before they took effect or after they had taken effect? No, I don't know the answer to that question. These are non-rate — rate-related amendment — State plan amendments. But the point is the administrative process is working. We obtain — and it resolves in the usual case in a consensual resolution that is consistent with the cooperative nature of the joint venture between the State and Federal government. That's where I'm a little bit confused. Sotomayor, the injunction here only stopped you from implementing the rate changes until you got approval from HHS in its administrative process that it was going to approve the amendment, correct? No, I don't believe the injunctions were that limited. And so if we obtain State plan approval, we then would have to go back to the courts and argue over what the impact is of — of the State plan approval. That's a separate question about whether the courts are required to give deference to an HHS finding. But the injunction here wasn't one that said you could never do this. It just said go finish the process, right? No, the injunctions were not so conditional. And the — and the point I want to make is the injunctions have disrupted the administrative process as it is intended to work by drawing out the process, by politicizing the process, by prejudicing our ability to get State plan approval, because now there's the concern about what about retroactive relief if we approve your State plan. Well, the courts, I take it, have the prerogative, perhaps even the obligation under the primary jurisdiction rationale to simply withhold adjudication until the agency acts? And we requested that in some of these cases, and the courts ignored that argument. And so the upshot is that we are now — But that's an abuse of discretion, not an absence of power. You're arguing an absence of power. Well, there is no cause of action. That's correct, Your Honor. Our position is that there is no cause of action here. So to go back to the question that Justice Alito asked you about why there's no cause of action, you are asking us to treat the Supremacy Clause differently from every other constitutional provision. Why should we? Well, for several reasons, Your Honor. First, when — what you're doing here, what the Court is doing here is enforcing a Federal statute. You look through the Supremacy Clause to the obligations that— The Supremacy Clause is part of the Constitution. It is. And the Petitioners here — excuse me, the plaintiffs here essentially said that the Supremacy Clause, as part of the Constitution, had been violated and sought not damages, but only a prospective injunction. And the question is why the Court shouldn't do what the Court has done many, many, many times before, tens and tens and tens of times before, and say, yes, that's our prerogative and we'll proceed to the merits. Two points, Your Honor. First, they did seek damages and they obtained damages in independent living. And second is the obligations that are imposed, the study requirement, the data requirement, all these obligations are imposed by 30A. You look through the Supremacy Clause to the statute to see the obligations. And so the question is, does Congress get to control who enforces those obligations or not? Kagan in a suit that's brought under a statute directly, a person could be claiming damages. Here, that is not the case. A person is only claiming injunctive relief. And that should — there should be a difference between those two in terms of when the cause of action is available. First, I just want to point out, in independent living, they did claim damages and they obtained damages. But setting that issue aside, no, Your Honor, this Court has the obligation and the right with respect to constitutional provisions to determine how they will be enforced, subject potentially to congressional action. But there's far more latitude for the Court. With respect to statutes, of course, as this Court explained in Davis v. Passman, deference to congressional intent is appropriate. Alito, suppose the plaintiffs here were facing an imminent State enforcement action. Would your argument be different? Well, if the plaintiffs fell within — yes. And if the plaintiffs fell within the bill in equity to restrain enforcement proceedings that was at issue in Ex parte Young and that Justice Kennedy has discussed in terms of the immunity to invalid regulation, then the result would be different. But there are several reasons why. But how does that square with the argument that you made that you're relying on separation of powers, the spending clause in the language of 30A? All of those are still in play in that situation. Well, for a couple of different reasons. First of all, a defense, which is what you're asserting in such a case, is not a cause of action. And so it doesn't implicate the separation of powers concerns to the same degree as a standalone cause of action to compel the State to comply with an obligation owed to another entity. Also, in those cases, there — in the equity cases, equity doesn't provide a remedy just for an injury. You have to have an invasion of what in old times was called a primary right. But what that means is a right to property or a right in the person. And there were other kinds of primary rights, but those are the two major ones. But what about the providers who say, but under the State law, if we charge more than the hospitals, if we charge more than the State ceiling, we are subject to sanctions. So this does fit into the category of anticipatory defenses. No, it does not, because we have not threatened to enforce that statute. They are not arguing that statute is preempted. They — the statute that they are focusing on — But wouldn't they be — the rates go into effect. Someone charges more on the theory that the rates are impermissible under the supremacy clause. That person would be subject to sanction under State law. And that would be a different case. And it would be a closer case, although even in that context, because of the spending clause context in which the case arises, I don't believe they would be able to challenge that as — under the supremacy clause. But that is not this case. That case, at least, presents the fact — and the reason why it's a closer case is because in that case, there is regulation and we are potentially infringing on their property. However, what's the law that they are trying to assert defensively there? It is a spending clause provision that has administrative standards that's been entrusted to Congress. So shouldn't Congress be able to enforce it? Fundamentally, this Court — Scalia. It's a hypothetical, but that could happen, couldn't it? What if one of these Respondents charged more than the State law permits? Wouldn't the State move against them? Of course we would. And they would have a decision about whether to stay in the Medicaid program or not. But the question is, does this Court exercise its equitable powers to create a cause of action that Congress itself has not? That's really the question for this Court. In the spending clause context, with respect to this kind of standard that is suited for administrative standard, we submit you should not. Unless there are any further questions, Your Honor, I'd like to reserve our remaining time for rebuttal. Thank you, counsel. Mr. Kneedler. Mr. Chief Justice, and may it please the Court. Medicaid is a cooperative program between the Federal Government and the States. Congress has not created a cause of action under that Act for private parties to enforce particular provisions of it. Nor does paragraph 30A confer private rights that are enforceable under 1983. Rather, paragraph 30A is written in general terms that describe the general undertaking by the State in its bilateral relationship with the Federal Government. Mr. Kneedler, is your argument in this case limited to spending clause legislation? Yes. And what is the significance of that? Sotomayor, if it's not, could you please – you said yes, it is. Yes. But give me the theoretical foundation. If the Supremacy Clause doesn't – I'm assuming you agree with your – with Petitioner – that it doesn't provide for a cause of action. Yes. Is that your position? Yes. Then what gets all of the cases that we've had since 1824 into this Court that have granted injunctive relief on supremacy arguments? I think that the great majority of those cases are ones in which the plaintiff in the suit in equity is bringing an action, anticipating an action at law. Well, but we have plenty that don't. King, Townsend, Carlson. We've had many others that are not dissimilar from this case. I think, though, that they do not reflect a general assumption that there is a cause of action directly under the Supremacy Clause, because as this Court says, the Supremacy Clause is not itself a source of rights. So go back and explain to me how all of those cases – what's the theory? I think there is a – there is – one has to look to an equitable cause of action, which is, I think, the way Ex parte Young describes what was going on in that way, is anticipating – it was a defense, anticipating an action at law. So go to your Petitioner's response to one of my colleagues, to Justice Scalia, when she said, yes, if these providers decide to charge the old rate to their patients, the State will go after them. How is that any different than the cases where we're talking about railroads charging – not charging customers more than a State commands because the penalty is too high? Or those types of cases that fall into this preemptive category that you're talking about? That has not been the plaintiff's theory of this case. They have not said we're going to resort to self-help and charge more than the State allows. What they want to do is they brought this suit to challenge the rates in the first instance. They are not claiming that they're going to violate State law and charge more. They are simply wanting to challenge the rates that the State has charged. If I could return to the other point. Sotomayor, that's theoretically different than the example I just gave you. Yes, I think it is. And if I could explain why. Scalia, all they have to do, as far as the government is concerned, is amend their complaint to say we intend to charge higher rates than the State law allows. And then you'd agree that the suit would lie. I'm not sure there would be further questions that would arise in that context. For example, I don't know whether in a prosecution under the statute for charging that prohibits charging more than State rates allow, whether you can raise as a defense in that prosecution a challenge to the validity of the rates. Well, gee, we're not deciding a whole lot here, then. It's just a matter of pleading that we're deciding. Well, that's why I'm saying there might be a further question in what you're describing as to whether that would even be a valid defense in the State prosecution. Because I can certainly imagine the State saying we don't want our rates tested in individual criminal prosecutions any more than we would want them tested in affirmative suits like this. Kagane. Kagane. Mr. Kneedler, why should this even matter so much, whether there is a defense available in a regulation that's brought against the person or not? In your brief, you admit that there are numerous cases that don't fit within that   prosecuted in a way that would make some sense to change the behavior of the person, to regulate the person, even if that person doesn't have a proceeding in which to mount a defense? And we – this Court has treated those cases in exactly the same way, haven't they? Kneedler. Yes, but unexamined. And let me say, we are not challenging those cases. And the Court, we think, doesn't need to look more broadly to a theory. We are – to an all-encompassing theory. We are focusing on spending clause legislation and, in particular, cooperative Federal-State programs under the Spending Clause. So you think there may well be implied rights of action outside the Spending Clause context? I think probably the best way to explain them is equitable cause of action, drawing on the Court's traditional equitable jurisdiction. You could call that an implied cause of action under the Supremacy Clause, but I think historically it's been described as an exercise of the Court's equitable authority. The Court has equitable discretion, and we think because of the Spending Clause nature of this legislation, it should not create a cause of action. So your answer to my earlier question was that you're not arguing about that in this case. Right. We are focusing on the government. We don't have a position from the government on whether or not there's an implied right of action under other constitutional provisions. Under? Outside the Spending Clause context. We are certainly not challenging the existence of a cause of action at equity. I'm just – I think we would view it as a cause of action in equity rather than implied under the Supremacy Clause, but I think you might get to the same place. But I think it is judicial creation of a cause of action. But if I could, before my time expires. Scalia, you do not even exclude all Spending Clause cases. You only exclude those Spending Clause cases where the plaintiff does not say we are, you know, we are going to violate the State law and they are going to come after us. So you haven't made an exception for Spending Clause. Well, it – I don't think there is any categorical rule, because, for example, under Spending Clause cases you can have rights enforceable under 1983. Our basic point is a Spending Clause is a contractual relationship between the Federal Government and the State. And the Respondents here are in the position of people asserting rights as third party beneficiaries to the bilateral relationship between the United States and the States. Under standard contract law principles, a third party can sue only if the parties intended him to be. Ms. Kagan. Ms. Kagan, this is what you said in your cert stage brief. You said, Those programs in which the drastic measure of withholding all or a major portion of the Federal funding is the only available remedy, and you are talking here about Spending Clause programs, obviously, would be generally less effective than a system that also permits awards of injunctive relief in private actions. Yes. And the circumstances in which the Court has made that point and that we agree with are often in situations where you have Title VI, Title IX, instances of individual discrimination that are arising under Federal programs, or where you have a right under 1983 where there is an enforceable right that a party has and is going into court and is supplementing the agency's oversight. Here, under paragraph 30A, you have only general standards that are really suitable for administrative review with balancing general. And this is not a big difference. Kagan. I mean, do you think if 30A were written, were drafted as a formula, a rate schedule formula, that there would be a cause of action, but because 30A is more general in nature that there is no cause of action? I mean, surely that's a question for the merits of whether there is preemption or not. Well, I don't think it's just a merits question. I think it also goes to the question of whether the parties to the contract intended third-party beneficiary-type rights to be able to sue under a what is really analogous to a contract. I would also point out that this Court's decision in Maine v. Thibodeau, which first recognized the 1983 cause of action, pointed to prior cases enforcing Social Security programs on the assumption that 1983 could have been the only source of the cause of action. If there was an implied, judge-made cause of action in those circumstances, that assumption would have been unwarranted. Ginsburg. And, Mr. Kneedler, before you sit down, could you please enlighten us on two back points? One is, what is the status of the 30A rulemaking? Because I take it once the rule is made, it would get Chevron deference. You said that there would be a final rule in December. Is that still? Kneedler, I'm informed that it may slip past December, that there has been a lot of interaction with comments on it. I don't know a precise date, but I'm informed that that may be possible. How about the status of the hearing on California's compliance? That is still pending. There have been extensions. There have also been plan amendments that have been submitted covering some of these same rates. Justice Ginsburg, I also wanted to respond to one of your questions. I do believe the United States would have an injunctive action in certain circumstances. For example, if the United States disapproved a plan and a State continued to — a plan amendment and a State continued to follow the terms of the disapproved plan amendment, I think the United States would have a cause of action to enforce, according to the Congress. Kennedy, would it be a preemption argument? No, it would be enforcing the terms of its agreement with the States. It doesn't have to rely on preemption in those circumstances. Do you agree with the counsel for the Petitioner that if the State chose to allow its courts to issue an injunction on supremacy clause grounds in the State courts, that that would be impermissible? We think it's a harder question, but probably so because we believe paragraph 38 does not confer private rights, and that would be true in State court as well as Federal court. Thank you, Mr. Kneedler. Mr. Phillips. Thank you, Mr. Chief Justice, and may it please the Court. I'd like to focus on two points that came out of the questioning in the first part of the oral argument today. First of all, I'd like to focus on the question — or the comment, at least, and the question that flows from it from Justice Alito, which is that there has never been a recognition of a cause of action in any ex parte Young case. And that's 100 percent true, and I didn't hear any response to the other side that suggests anything to the contrary. And the reason for that is, obviously, what this Court said in the Verizon case and what it said in Shaw is that you look to the supremacy clause as the basis for rising under jurisdiction, and then if you have jurisdiction, then you look to the traditional equitable standards to determine whether they've been satisfied in a particular case. And under this Court's decision in ex parte Young, what the Court said was an injunction which restrains the State officer from taking any steps towards the enforcement of an unconstitutional enactment to the injury of the complainant is the basis for relief. And that's exactly the circumstance that we have in this case. And thus the case is not going to be a case that's going to be a complete end-run around all of our implied right of action jurisprudence. We've wasted a lot of time trying to figure out whether there's an implied right of action under a particular statute if there's always been one under the supremacy clause. Mr. Chief Justice, there's a very fundamental difference between an implied right of action or an action under Section 1983 and the very simple and straightforward ex parte Young remedy that's otherwise available. Under 1983, in private rights of action, the district courts or Federal courts, State courts for that matter, in enforcing them have authority to grant damages. They have much broader injunctive relief. And under Section 1983, there's a pretty speedy injunctive relief. First of all, all of those cases, I don't know if all of them did, but certainly a lot of them did, include – included claims for injunctive relief. And I would have thought the Court's authority under your equitable action under the Constitution would be at least as broad as it would be under the statute. Well, ex parte Young has been pretty consistently evaluated on it as saying simply you cannot do what the Constitution immediately prohibits you from doing. And so, frankly, the ex parte Young remedy has been a negative injunction. Not to violate the supremacy clause. Your position is that the Constitution prohibits you from doing anything where the State law is preempted by the Federal law. To be sure. That doesn't sound very narrow to me. Well, but if you go back and look at the cases in which the 1983 relief has been involved, a case like Blessing. In Blessing, the complaint there sought essentially to take over the entire State law function of providing support for children. And that was the injunctive relief that was requested. And if the Court had adopted the notion that 1983 carried with it a private right of action, that would have been available relief. There would have been a claim for damages in that circumstance, and there would have been access to attorney's fees. One of those things is available. What if the law that Congress passes sets forth certain Federal standards, it's a cooperative Federal-State law like this one, and it says, and there's no private right of action for any individual to enforce this? That's limited to the Federal government. In that situation, there's obviously no authority to bring a private right of action under the statute. That still doesn't answer the question whether or not there is a right to invoke the supremacy clause. So there's a conflict between Federal and State law. Roberts. Congress can say in the same statute that confers the allegedly preemptive Federal standards that we do not want individuals bringing actions in court to enforce this. We want to leave that up to HHS. And you're saying even though Congress said that, individuals can nonetheless bring a suit. Under the supremacy clause, the theory of which is we are making sure that Federal law controls. Right. The same Federal law that says you can't bring a cause of action. No, I understand that, Mr. Chief Justice. But you still have the problem that even under those circumstances, a regime can arise in which there is a square and in this case, you know, I think undeniable conflict between Federal and State law. And the question is, and that that conflict imposes not only injury in fact to an individual, but also imposes irreparable harm. But you're saying then if Congress loud and clear says we want HHS to be the sole enforcer of this law. Of Federal statute. Of this, yes. You're saying that that would be ineffective because there could still be a supremacy clause claim. Yes. Whether or not you would in fact get relief under the supremacy clause seems to me a very much put question. That's on the merits, but Congress says we don't want anybody coming into the court. We want to do it. I don't think Congress has the authority to essentially say there are some conflicts between Federal and State law that we will simply ignore, even though they cause irreparable injury. Is that necessary to your position? No, absolutely not, Justice Kagan. Because you could take the view, right, that if Congress speaks to cut off a claim, that's one thing, and a very different thing than if Congress has not spoken at all. Right. And it seems to me here is a situation where you would expect Congress to have spoken explicitly if it intended this. Well, then it's a question of what would be the default rule. Congress is silent. Of course. Is the default rule that there is the supremacy clause action or that Congress must expressly allow it? And the reason why the default rule would almost certainly be that in fact you can bring the ex parte young cause of action is because the effect, you know, the spending clause has been subject to the preemption claims since 1968. This whole notion that they contracted against this background of what obligations did they assume, the obligation that they clearly would have assumed is that if, in fact, there is a violation of Federal law based on a failure to satisfy one of the conditions of spending under these circumstances, they would be susceptible to an ex parte young injunctive action. Breyer. I'm not certain of this. I find this a difficult case. It seems to me the government is prepared to concede that if an individual has a Federal right that he'd like to enforce and someone is trying to block it by asserting a State law that he thinks is preempted, he can go ahead. If it looks as if the State is going to take something from him that a Federal law guarantees and he has a defense that he'd like to make to that under Federal law, the State law that seems to allow it is preempted, he can make it. Our problem arises where neither of those things is true. So we say what is true here? What kind of Federal thing does he have? And the word is that rates have to be, that the rate that the State has to pay back to the doctor has to be sufficient. Okay? Sufficient. That's basically the word. Right. All right. So I see three possibilities. One is you say, sure, let all the doctors go and sue. There are only 50,000 kinds of reimbursement. Maybe there are a million. I don't know how many. And they only take place in, let's say, 400,000 counties. And we will have Federal judges reaching different views about what is sufficient in each of those different places, and sometimes they will agree. Did Congress want that? Well, hmm, problem. The second way of going about it is cure that and say you win, but you have to use primary jurisdiction, and you have to get the government's view on it, judge, and before you decide, you have to pay attention. There is a long line of cases. I have one more thing and then you will get all three. Can I enter it? But can I deal with that one immediately? Yes. Because I think it's important in the context of this case to recognize we are talking about the issuance of a preliminary injunction that was designed to hold everything until matters could be avoided. Realize that we are talking about a situation where the State, solely for budgetary reasons, without regard to Federal law whatsoever, simply made a slash in the reimbursement system. Breyer. I want your view on whether the right approach. You are saying what is the status quo pending, and I want your view on these three possibilities. One is the possibility the judges just do it in all the different places, try to figure out what is sufficient. The second is the possibility that we try primary jurisdiction, and that's the – then the curly cue on that is what do you do pending, and, you know, that's your injunction. And that's what I just want to be clear on. And the third possibility is you say I'm just sorry that the – this is just too vague, the sufficient, et cetera. It has to be centralized. There is no way to work this out with all these different judges and different kinds of rates and different kinds of provisions. And so this is an instance where you cannot bring your claim that something violates the Supremacy Clause because you don't have a Federal right to a thing, and they are not trying to take away a thing that the Federal right gives you, et cetera. Or do you see those three possibilities, and what I wanted you to do is to address them? The third possibility, it seems to me, Justice Breyer, is not much different from a lot of the other cases that this Court's already decided, like Crosby and like manufacturers, where there's just a vague standard out there, and the – and it doesn't – and it's – they're not asserting a right to be – not to have an enforcement action brought against them. And this Court has routinely held in that circumstance that there is, in fact, a Supremacy Clause action available. So I don't think the third option is really an option, and it also ultimately goes to the merits of the preemption claim. If it turns out that all of this is just too squishy to evaluate, then it would say there's not a clear enough statement of Federal law to justify saying there's a conflict that would – and therefore you would lose on the merits. But that wouldn't prevent you from going into court and trying to make the kind of showing that we made here. Breyer, you think primary jurisdiction is the way to do it? You say I see a practical problem, and the practical problem is millions of rates, all judged by the term sufficient, and instead of the agency in charge deciding what's sufficient, we do have a lot of judges. But, Justice Breyer, the agency always has the ultimate authority here to step in and take action. I think the real question is, is it reasonable to think that Congress meant to place this in an agency in circumstances where the agency isn't going to receive notice of the implementation of the change before it gets implemented, where the State is permitted to take no – to make no response to a request for information and allow the unlawful rates to go into effect for years on end? Can I ask about the question? Sotomayor, why are you fighting Justice Breyer so much? I mean, it sounds like you are, and that's why I'm having some difficulty. There are two points. I'm following up on his, and then my second question. Engage the Solicitor General's suggestion that this isn't the cause of action under the Supremacy Clause, but that it is a cause of action under some implied equitable doctrine, okay? Which may square, and I'm now coming back to Justice Breyer's question. I agree with all you were trying to say about what the State did or didn't do here. But if it's a primary jurisdiction question, what's wrong with just saying that the Court's power is limited under equity to issuing an injunction that gives the matter over to the administrative agency, that puts in the status quo, assuming there's some sort of violation of Federal law or seeming violation of Federal law, a preventive injunction that just stops the State from acting until the administrative process concludes? What's wrong with that? Justice Sotomayor, there's nothing wrong with that, candidly. We would be perfectly comfortable with that, but I don't understand the other side to be complaining about the scope of the injunctive relief. It is not that they are saying you can't have any. Right. And so But Justice Breyer's question, I think, was slightly different, which is what's the limit on the Court's power? Well, we did have an alternative argument that the injunction should stay into effect until HHS acts, and the district courts granted a broader preliminary injunction and didn't consider the alternative argument that was there. But, again, it seems to me, you know, the Court ought to recognize that you are in the context of preliminary injunctive relief in this situation, and there will be plenty of time to kind of work through the nature of the injunctive relief if, in fact, the Court is allowed to go forward and take up the Ex parte Young issue under the circumstances. Sotomayor, would you engage the question that the approach the Solicitor General has been making, which is don't find a cause of action under the Supremacy  I mean, I'm perfectly comfortable with that rationale. I think the answer is it's sort of a combination of the Supremacy Clause and the broad equitable relief, rather than one, I mean, clearly one or the other. They seem to go pretty much hand in glove in the Ex parte line of cases, and so I don't have any particular problem with that. Well, I might, if you continue in your earlier position, that a Supremacy Clause cause of action would stop Congress from having a voice in enforcement and cutting it off clearly. If Congress were to write a law that says no one can enforce this either in damages or in injunctive relief, your earlier answer seemed to suggest Congress didn't have the power under the Supremacy Clause to do that. Well, I suppose it would depend on the circumstances of the case, but I do think there is some gap between the full extent of Congress's power in this area and the protections of the Supremacy Clause, if for no other reason than because the executive branch also has the authority and certainly acting within its own exclusive authority could preempt State law or create a situation where State law would be preempted. And I don't think Congress would have the authority to take away the Ex parte Young remedy under those particular circumstances. Alito, so the legislature responds to the argument that the equitable power exercise of the Ex parte Young in similar cases is limited to certain specific situations, such as where there is an imminent threat of a State enforcement action and a few others, where there's a trespass, where there's a clearly defined Federal right. And it doesn't encompass every situation in which the plaintiff simply has Article III standing and wants to obtain an injunction that a particular State law is preempted by Federal law. I mean, to be sure, the Court in Ex parte Young was dealing with a specific situation of trying to prevent enforcement. But the Supreme Court, this Court in all of its decisions post-Ex parte Young, has never said that that's the only circumstance and has certainly never said that in exercising the judicial power under Article III that extends to all cases in equity, that it means only the equity that existed in the 18th century at that point in time. So it seems to me the right answer at this stage is for this Court to look at the situation and say, is this a context in which equitable relief would be appropriate? And if you just use the preliminary injunction standards, it clearly would be appropriate under these particular circumstances. We have a likelihood of success on the merits, irreparable harm in the balance of harms favor the plaintiff. Kennedy, what is the best authority in our cases, other than Ex parte Young, or in a treatise, or in recognized statements of the difference in law and equity, for the proposition that in this area we can make a distinction between law and equity after centuries in which we've tried to say that that distinction ought to be blurred? I mean, you want us to write an opinion and say, oh, there's a difference in damages and equity. Well, only in the sense that Ex parte Young, what do I cite for that? Well, any of the cases in which the Court has recognized that, obviously, in order to get injunctive relief, you have to demonstrate that there's no adequate remedy at law. So, I mean, the distinction has always been there, even after the merging of law and equity in the early part of the last century. That's not the theory on which we've said you can't get damages under Ex parte Young. The theory that prevents damages is the theory of sovereign immunity. The fiction that you're moving against the individual and not against the State simply cannot be maintained when you're taking money out of the State treasury. That's the basis for it, not what you've just described. No, but I'm not asking for — I mean, we're not asking for damages here, Justice Scalia. All we're asking for is the injunctive relief. But that wouldn't explain a case like Gonzaga, where there was no State entity. Gonzaga was a private institution. Right. So I'm wondering — I understand the Eleventh Amendment dynamic, which Justice Scalia pointed out was the whole driving force of Ex parte Young. Is there any other basis for us to say that there has to be a law-equity distinction? You say, well, that's because there's no adequate remedy at law, but that's circular. That assumes because there's no cause of action. So that doesn't work. No, but all — I mean, all of the cases that come out of the Ex parte Young line of authority seem to be — you know, they all tee off, obviously, the problem that exists in this context, which is the one Justice Scalia has outlined. There must be a limit. Because if there is not a limit on what you can do under Ex parte Young, I can go in my office and I look at the statute books, and they are just filled with statutes, and I'm Federal. And if I had all the State statute books, there would be 15 offices or 20 or 100. And I know perfectly well that a lot of those statutes in the Federal books have to do with agencies, and they give jobs to agencies. And it's perfectly apparent that the ones who run those statutes in many instances are the agencies. And really, judges are out of it. Now, if I adopt your line, it seems to me I am saying that any time that a Federal person has an individual of saying that a State law is contrary to one of those statutes, he can run right into court. And I can see we've done that where he has some kind of right that he's protecting that's threatened in some way or that he wants to assert. I can see that we could do that in the foreign policy case like Burma. I can see that we could do that where Federal voting rights are at stake, which are very important. But a principle that says you can do that any time you want seems to me a little – it seems to me the real fear, far-reaching in the extent that it just stops the agency from doing their business at the behest of anyone who would like to assert a State law or States. It's a mess, in other words. Phillips, two points here. First of all, we're not talking about a situation of somebody seeking a roving commission to go find out all Federal – all situations where State law violates Federal law. The beneficiaries in this case. Breyer, your people have your problem, but some other people have another problem. Phillips, but my people have a life-and-death problem, Justice Breyer. So if there were ever a situation where you would say, let's look to see whether or not there is relief available, this would be the situation where I would hope the Court would be particularly sensitive. Breyer, the doctors want to be paid more money, or at least not paid as much as they were. I understand that. Phillips, but the beneficiaries, the patients are the ones who lose access to pharmacies. Breyer, so is there a medical exception? I'm sorry? Is there a medical exception? Is it that you can have this generalized claim if you're a doctor, but not others? No. To be sure, Justice Breyer, the exception is that we have to satisfy the requirements of Article III. We have to have injury and redressability, and in order to get equitable relief, we are ultimately going to have to demonstrate that the injury is irreparable, that there is no adequate remedy at law. Those are high burdens. And in a circumstance where you cannot get damages and you cannot get attorney's   Thank you. Roberts. Kagan. Mr. Phillips, could I ask you a little bit more about how this interacts with the agency process? Now, suppose that California had done what the way I read the statute, it was supposed to do. Give the notice. Which is to go to the agency and say, we want to change our rates, we can't afford these rates anymore, and we think these lower rates will do just as well, all right? And then they go to HHS and they wait for HHS to approve what they want to do. If HHS approves we wouldn't be here. I can guarantee you we wouldn't be here. Well, if HHS approves, maybe somebody does sue, and then there's great deference to the agency. Isn't that right? That's exactly right. And if HHS doesn't approve, then what's there to talk about? There's no suit. Right. No, there's no question. So either way, the agency wins, right? Right. The agency always wins.  But then the question is, why is there no suit if the agency doesn't approve? Well, I mean, if the agency is saying Congress can't say there's no implied right of action, but the agency can't? Well, I was just saying, if the agency didn't approve, your clients don't have anything to complain about. Right. Because you have a suing manager. Well, I suppose it depends on whether they go ahead and if California, in the face of disapproval, continued to violate the law, that would be – I assumed you meant that California complied. Right. Sorry. But the agency approves rates and someone who's dissatisfied with the rates sues and says, these rates are ridiculously low. Well, you can bring the lawsuit, Justice Alito. The bottom line is you're going to lose that litigation. And in a circumstance where you have no realistic prospect of – Why do you think they're going to lose the litigation? Why should they lose the litigation if it's really – if there really is a cause of action there? Some of the Medicaid rates are very low, aren't they?  But you still have a cause of action under the Supremacy Clause. Oh, no. To be sure I have a cause of action. I thought you were saying you didn't. If the agency – No, no, no. I'm not saying I don't. I'm just – all I'm saying is that if the process works appropriately, there would be not the kind of litigation that Justice Breyer was worried about, where you would have hundreds or thousands of cases going forward. If the process – which, again, it goes back to the default rule. You've lost me here. You say there would be a cause of action under the Supremacy Clause if the agency approves the rates, but your clients don't think the rates are high enough? Sure. We would still say there's a – we would still have an argument that there's a conflict between Federal and State law. Well, Federal law is determined by the agency, surely. So long as the agency is complying with the Administrative Procedure Act, I don't see how you have any cause of action under the Supremacy Clause. You may have an APA cause of action. Well, the problem with the APA – we might have an APA cause of action, but I also think that there's a – I mean, look, that hypothetical is so far removed in this case. Federal law is not determined by the agency? I'm sorry, Justice Scalia. Federal law is not determined by the agency? No, of course Federal law is determined by the agency. Not without limits. They don't have a Supremacy Clause cause of action. Well, I think you – I still think you could bring an action under the Supremacy Clause. I think ultimately you have very – you have zero hope of prevailing, which is what we're looking for. Why does the agency get to determine Federal law when Congress doesn't? You told me earlier if Congress says in a statute no implied right of action, that that doesn't control. Right. But that doesn't – that controls to the extent of trying to enforce directly the Federal statute. It doesn't control with respect to trying to enforce the Supremacy Clause. The Supremacy Clause says the judges in every State should be bound thereby, but you want to amend it so the judges in every State and all administrators should be bound thereby. Then you have a Supremacy Clause action against every Federal agency. That doesn't make sense. Well, no, but what the Supremacy Clause says is that Federal law will be supreme in all circumstances, notwithstanding State law being contrary. Number one, it doesn't say that. It doesn't say all circumstances. It doesn't say that. The Supremacy Clause – well, I don't know of any exceptions in the Supremacy Clause where State law gets to remain supreme to Federal law. Justice Alito's question was related to a Federal agency. The Federal agency does something that's inconsistent with the statute, arguably. You say there's a Supremacy Clause violation? That's novel. No, not that the – what the agency has done violates the Supremacy Clause. It's the State acting pursuant to what the agency has approved, that if you still thought it violated Federal law would be a basis for seeking a Supremacy Clause action. But, no, Justice Scalia is right. The obvious – the obvious solution to the immediate problem is to seek review of the decision by HHS and to follow it under those circumstances. The second point that I wanted to focus a little bit about, because it does seem to me, again, it goes to what are the – what should be the background principles that operate here, and a couple of Justices specifically raised the question of, you know, would this case be different if we were seeking to balance bill, that is, to bill the extent to which we were allowed to bill prior to the time that the State of California reduced by 10 percent. If we brought that lawsuit, would that be perfectly permissible? And I understand California, I think, has suggested that it would be, and I heard Mr. Kneedler suggest that, well, there might be some additional issues there. But the reality is, is it seems to me that shows you just how unrealistic the distinction is in this particular case, because we're talking about individuals – you know, the question is not, you know, how are you going to implement this down the road. The question is, what do you do with someone who is suffering a lack of access to vital medical care in a way that is irreparable, and is it realistic to think that Congress meant, under those circumstances, to deprive the individual plaintiff of any kind of rights? And the answer is no. And that's as far as the Court needs to go. It doesn't need to figure out exactly how far Congress could deal with the supremacy clause, because I realize that there is some skepticism on that score. But on the core question here, did Congress intend to deprive these plaintiffs of their rights under Ex parte Young, the answer is no. That's the question. Roberts. And the answer is yes, they intended to deprive them of the right to sue under the statute. I understand that you're not challenging the proposition that the statute, when Congress was specifically focused on the question of how to enforce this provision, they did not provide a right of action. And under our implied right of action jurisprudence, that means there isn't one. So why, when they're confronted with the precise question, did they say, no, we don't want these people to sue, but you say, well, they knew under the Constitution they were going to be able to anyway? Because there is a difference between providing a private right of action and all the bells and whistles that go with that, as opposed to recognizing that Ex parte Young is a background principle that's been in place for well over a century, and that says that when the standards for equitable relief are satisfied, the courts have the power and they can prevent the violation of the supremacy clause. You said you would be satisfied with a limitation that the Court can issue an injunction pending the administrative procedure without going on to then the substance of the question, was there compliance with 38 by California? Yes, Justice Ginsburg, I would have been perfectly comfortable with that. I mean, that was one of the alternative grounds for relief that we sought. The district judge didn't happen to go down that particular path. But clearly, from our perspective, the important element is to maintain the status quo ante until a resolution of the legality of California's statute can be made, either by the agency or by the courts. But the one thing you shouldn't be allowed to do is simply to permit this to drift without any remedy and without any ability to get access to medical care that's clearly inconsistent with what Congress intended and where a remedy is available under the Ex parte Young formulation. If there are no further questions, Your Honors, thank you. Roberts. Thank you, Mr. Phillips. Ms. Schwartz, you have 4 minutes remaining. Thank you, Your Honor. So there are other provisions of the Medicaid Act that are privately enforceable. This one is not. I'd like to address the Court's questions about Ex parte Young. Ex parte Young, of course, involved a Constitution, the due process clause, not the supremacy clause, as the substantive provision of the Constitution that was being enforced. And the plaintiff had an independent, freestanding property or personal right in Ex parte Young in all of the cases that are its progeny. Now, there's another – I want to address Justice Alito's point about how do we apply the rights language – the rights requirement in Ex parte Young causes of actions. Yes, you do. Alexander v. Sandoval, California v. Sierra Club, Blessing v. Freestone. Look at Alexander v. Sandoval. The State passes a constitutional amendment that says English only. The State adopts a policy, English only driver's tests. This is challenged as conflicting with Federal law and specifically a Federal regulation. The Court said no – no court fiasco was satisfied. Congress drafts statutes. It controls who gets to enforce them. No question of action. Kagan. Kagan. Kagan. Are you saying – this is the way I understood you, and tell me if I'm right. Are you saying that the test for determining whether there's a 1983 suit is the same as the test for determining whether there's an Ex parte Young action? Because you talked about, you know, the – whether somebody has a right, which is usually the language we use in the 1983 context. No, I'm not. The test for whether there's an Ex parte – and there's different meanings of Ex parte Young, but none of them apply here. You can see Ex parte Young is construing a cause of action under the due process clause. This is not a cause of action under the due process clause. You can see Ex parte Young as involving a specific kind of bill in equity, which is a defense of regulation of your conduct where that regulation infringes a personal or property right. That is not this case. There's no regulation of Respondent's conduct, and there's no infringement of a personal or property right in this case. The only entity that's being regulated by the State – by the State statute that purportedly is being – well, that is being challenged as preempted is the State of California itself, because we are the entity that sets rates. And so the statute tells the agency, this is how you will set rates. So however you look at Ex parte Young, plaintiffs cannot satisfy the elements of an Ex parte Young cause of action. What I'm saying with respect to Alexander v. Sandoval and these other cases is injury is not enough. You have to have a right. Under equity, injury has never been enough, and it's not enough under this Court's separation of powers decisions and its Spending Clause cases. And I want to just segue very quickly to this idea that there's a default rule that a supremacy cause, cause of action exists by default. That is absolutely not true, and it is not true in this context, and I'd like to identify two reasons. First, the Souter fix. The Congress acted when this Court in Souter said that there was no cause of action. And it said, just because something's in a State plan doesn't render it unenforceable. But we want to preserve the holding in Souter. Well, that suggests that other things are unenforceable, that Congress is not legislating against a backdrop of an assumption that there's an injunctive relief claim, or it wouldn't have required the Souter fix. In Main v. Thibodeau, another case that assumes that the — that recognizes that with respect to Spending Clause actions, the sole means — Spending Clause statutes, the means, the vehicle for enforcing is 1983. And finally, in the Spending Clause context, we have the clear statement rule, which is incompatible with just an assumption that a cause of action always exists. Because the State has to have knowing and acceptance — knowing and acceptance obligations, we require that there be a clear statement. Thank you, Your Honor. Roberts. Thank you, counsel. Counsel, the case is submitted.